NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| YASMIN CHATT, | Civil Action No.: 10-cv-2705 (ES) |
| Plaintiff, | **OPINION** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**SALAS, District Judge**

Before the Court is an appeal filed by Yasmin Chatt ("Claimant" or "Ms. Chatt") seeking review of the Administrative Law Judge's ("ALJ") decision denying Claimant's application for disability benefits under Title II and Title XVI of the Social Security Act. The Court has considered the submissions in support of and in opposition to the present application, and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, the Court vacates the ALJ's judgment and will remand this matter to the Commissioner of Social Security ("Commissioner") for further proceedings consistent with this Court's Opinion.

**I.     Background and Procedural History**

Plaintiff is a 43-year old woman who claims to suffer from the following medical impairments: HIV residuals, chronic fatigue, back pain, Grave's Disease, right knee pain, and depression.[1]  (R. at 430-33).[2]  Ms. Chatt filed for Supplemental Security Income ("SSI") benefits

---
[1] Ms. Chatt also indicated that side effects of her HIV and anemia medications include headaches and diarrhea. (R. at 430).

on August 22, 2003, and is alleging disability as of June 28, 2001. (R. at 49-51). Ms. Chatt's application for SSI was initially denied on April 26, 2004 (R. at 23-27) and denied upon reconsideration on August 26, 2004. (R. at 33-36). Consequently, Plaintiff requested an administrative hearing, which was held on November 1, 2005 before the ALJ. (R. at 13). On November 17, 2005, the ALJ issued a decision denying Ms. Chatt disability benefits. (R. at 11-19). Claimant sought review of this decision. On July 12, 2006, the Appeals Council denied review. (R. at 4-6).

On September 14, 2006, Ms. Chatt initiated a civil action in the District of New Jersey bearing Civil Action Number 06-4326 (SDW). On July 29, 2008, the court issued an opinion remanding the matter back to the Commissioner because "substantial evidence [did not exist] in the record to support the ALJ's findings and additional vocational evidence [was] necessary." (R. at 328-340); *see also Chatt v. Astrue*, No. 06-4326, 2008 U.S. Dist. LEXIS 58770, at *20 (D.N.J. July 29, 2008).

In turn, the Appeals Council vacated the Commissioner's final decision and remanded the matter back to the ALJ for further proceedings that were consistent with the district court's opinion and order. (R. at 343).

On March 3, 2009, the ALJ conducted a second hearing. (R. at 423-51). During this hearing, the ALJ utilized Rocco J. Meola, a vocational rehabilitation counselor, to determine whether there was other work in the national economy that Ms. Chatt could perform. On March 18, 2009, the ALJ issued a decision that denied Ms. Chatt disability benefits. (R. at 315-27). The ALJ determined that "jobs exist in significant numbers in the national economy that [Ms. Chatt] has had the capacity to perform." (*Id.* at 325). For that reason, the ALJ concluded that Ms. Chatt was not disabled within the meaning of the Social Security Act. (*Id.* at 326). Ms.

---

[2] The Court uses the initial "R." to refer to the Administrative Record.

Chatt again sought review of the ALJ's decision. And, on April 12, 2010, the Appeals Council once again denied her request. (R. at 310-12).

As a result of that denial, Ms. Chatt filed a complaint with this Court on May 27, 2010. (*See* Docket Entry No. 1). The Court received the administrative record on November 3, 2010. The matter is now ripe for this Court's adjudication.

## II. Legal Standards

### A. Standard for Awarding Benefits

To qualify for Social Security benefits, the claimant must first establish that she is "disabled." 42 U.S.C. § 1381. "Under the Social Security Act, a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Halter*, 247 F.3d 34, 38-39 (3d Cir. 2001) (citations and quotations omitted). A claimant is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Social Security Administration has established the following five-step, sequential evaluation process to determine whether an individual is disabled:

> (i) At step one, the Commissioner must determine whether the claimant is currently engaging in any substantial gainful activity. If a claimant has not engaged in substantial gainful activity, the Commissioner turns to step two of the analysis.
>
> (ii) At step two in the analysis, the Commissioner considers whether the claimant's impairment or combination of impairments is (or are) severe. If the impairment is not severe, the claimant is not disabled and the evaluation ends. If, however, the claimant has

> a severe impairment, the analysis proceeds to step three of the evaluative process.
>
> (iii) At step three, the Commissioner must decide whether the claimant suffers from a listed impairment. If the claimant meets a listed impairment, she is disabled. If the claimant does not suffer from a listed impairment, or its equivalent, then the analysis proceeds to step four.
>
> (iv) Before considering step four, the Commissioner must first determine the claimant's residual functional capacity. At step four, the Commissioner determines whether based on claimant's residual functional capacity she can still do her past relevant work. If the claimant has the residual functional capacity to perform her last work, she is not disabled. If she is unable to do any past relevant work, the analysis proceeds to the step five.
>
> (v) At step five, the Commissioner must determine whether the claimant is able to do any other work in the national economy, considering her residual functional capacity, age, education, and work experience. If the Commissioner cannot show that work exists, then the claimant is entitled to disability benefits.

20 C.F.R. § 404.1520(a)(4).

### B. Burden of Proof

The five-step sequential evaluation process involves a shifting burden of proof. *See Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). At step one, the claimant has the burden of establishing that she has not engaged in "substantial gainful activity" since the onset of the alleged disability, and at step two that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c). If the claimant is able to demonstrate both that she has not engaged in substantial gainful activity and that she suffers from a severe impairment, then the claimant must then demonstrate—at step three—that her impairments are equal to or exceed one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(d). If she is able to make this showing then she is presumed disabled. If she cannot show that she meets or exceeds a listed impairment, then at step four she

must show that her residual functional capacity does not permit her to return to her previous work. 20 C.F.R. § 404.1520(e). If the claimant cannot show this, then at step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. 20 C.F.R. § 404.1520(f). If the Commissioner cannot meet this burden then the claimant shall receive disability benefits.

### C.     Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g) and 1383(c)(3); *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Although the Court gives deference to the ALJ, it must "scrutinize the record as a whole to determine whether the conclusions reached are rational." *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978). In doing so, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). Instead, the reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. *See Taybron v. Harris*, 667 F.2d 412, 413 (3d Cir. 1981).

### III.    The ALJ's Findings and Final Determination

At step one of the analysis the ALJ found that the "[C]laimant has not engaged in substantial gainful activity since June 28, 2001." (R. at 319). At step two, the ALJ determined that the medical evidence supported a finding that the Claimant suffered from the following severe impairments: HIV infection, a bulging lumbar disk, obesity, Grave's disease, and fatigue. (*Ibid.*). At step three of the evaluative process, the ALJ concluded that "the [C]laimant does not have an impairment or combination of impairments which meet or equal the level of severity and duration of any impairment listed in the Listing of Impairments of Appendix 1, Subpart P, Regulations No. 4." (*Ibid.*). As part of the step four analysis, the ALJ explained that the Claimant retained the following residual functional capacity: "lifting and carrying objects weighing up to 20 pounds; frequently lifting and carrying objects weighing 10 pounds; standing, walking, and sitting up to six hours in an eight-hour work day; pushing and pulling bilateral arm and left-leg controls but not right-leg controls; not requiring repetitive bending or squatting or exposure to heights or dangerous machinery." (*Id.* at 323). The ALJ also found that "the Claimant has not had any significant work that would qualify as past relevant work experience." (*Id.* at 324). Thus, the ALJ proceeded to step five and determined that "considering the [C]laimant's determined residual functional capacity, her age, education and absence of any prior relevant work experience, jobs exist in significant numbers in the national economy that she has had the capacity to perform . . . in view of vocational expert testimony [sic]." [3] (*Id.* at 325). Consequently, the ALJ concluded that Ms. Chatt was not disabled within the meaning of the Social Security Act, and denied Ms. Chatt disability benefits. (*Id.* at 326).

---

[3] The ALJ also determined that "even if the claimant's residual functional capacity were reduced to lifting and carrying objects weighing up to ten pounds; sitting up to six hours, and standing and walking up to two hours in an eight-hour day; not requiring pushing or pulling right-leg controls; not requiring repetitive bending or squatting or exposure to heights or dangerous machinery; jobs still exist in significant numbers that she has had the capacity to perform . . . ." (R. at 326).

**IV.     Analysis: Review of the ALJ's Determination**

On appeal, Ms. Chatt argues that substantial evidence exists in the administrative record to support a finding of disability.  Therefore, Ms. Chatt asks this Court to reverse the Commissioner's final administrative decision.  Alternatively, Ms. Chatt asks the Court to remand the decision to the Commissioner for reconsideration in light of alleged deficiencies contained in the ALJ's decision.  (Cl. Moving Br. at 1).  The alleged deficiencies are: (1) the ALJ did not consider Claimant's obesity in combination with her other severe impairments (*id.* at 7-15); (2) the ALJ failed sufficiently to evaluate Ms. Chatt's subjective complaints of pain (*id.* at 21); (3) the Claimant's residual functional capacity as identified by the ALJ ran contrary to the record and law (*id.* at 22-30); and (4) the hypothetical questions submitted to the vocational expert were flawed because the questions failed to accurately reflect Ms. Chatt's limitations.  (*Id.* at 31).

Below, the Court addresses each alleged deficiency in turn.

**A.     Claimant's Obesity in Combination with Other Severe Impairments**

A threshold issue this Court must consider is whether to give preclusive effect to an argument that Ms. Chatt asserted during her first appeal, which she seeks to relitigate in this action.  The specific issue is whether—at step three—the ALJ failed to consider Ms. Chatt's obesity in combination with her other impairments.

The law of the case doctrine controls this inquiry.  This doctrine "directs courts to refrain from re-deciding issues that were resolved earlier in the litigation."  *Pub. Interest Research Grp. v. Magnesium Elecktron*, 123 F.3d 111, 116 (3d Cir. 1997).  The law of the case doctrine is also applicable to courts deciding issues related to Social Security Appeals.  *See, e.g.*, *Chalusian v. Comm. of Soc. Sec.*, No. 10-5918, 2011 U.S. Dist. LEXIS 93402 (D.N.J. Aug. 22, 2011).

In deciding whether to preclude Ms. Chatt's argument, the Court finds the analysis and holding of *Chalusian* persuasive.  In *Chalusian*, Judge Chesler provided the following analysis:

> Plaintiff does not appear to consider the potential for this Court to disagree with Judge Cavanuagh's determinations and arrive at decisions which conflict with his—not that this Court has any reason to believe that this is likely to occur. Yet, it is unseemly to place one District Court in the position of overruling decisions of a sister court, wasteful of judicial resources, and not conducive to the administration of justice. It benefits no one to allow this. . . . Whether the doctrine is called the law of the case or issue preclusion, this Court recognizes that the parties before this Court fairly litigated certain issues in the prior appeal, some of which Judge Cavanaugh decided. . . . *These determinations will be accorded preclusive effect, and this Court will not relitigate them.*

*Chalusian*, 2011 U.S. Dist. LEXIS 93402, at *16-17 (emphasis added).

This thoughtful and well-reasoned analysis is applicable here. Ms. Chatt seeks to re-litigate the issue of whether the ALJ failed to consider the Claimant's obesity in conformance with the Commissioner's rulings. However, this precise issue was previously decided by Judge Wigenton in Ms. Chatt's first appeal. Indeed, Ms. Chatt argued "[t]hus, at step three, plaintiff's obesity was not considered in combination with her other impairments." (Cl. Moving Br. at 38, Docket Entry No. 9, Civil Action No. 06-4326 (SDW)). Judge Wigenton explicitly rejected Ms. Chatt's argument and held that "Plaintiff's claim that the ALJ failed to consider her obesity [in accordance with the Commissioner's rulings] is not substantiated."[4] *Chatt v. Astrue*, No. 06-4326, 2008 U.S. Dist. LEXIS 58770, at *19 (D.N.J. July 29, 2008). For that reason, this Court will accord Judge Wigenton's prior determination preclusive effect, and this Court will not allow Ms. Chatt to relitigate this issue.

---

[4] Nevertheless, the Court would note that in his supplemental decision, the ALJ did consider the possibility of additional or accumulative effects caused by Ms. Chatt's obesity. The ALJ found, however, that "there [was] no evidence to demonstrate that any ailments alleged by the [C]laimant have been caused or aggravated by [Ms. Chatt's] obesity." (R. at 321). In making this determination, the ALJ explained that he reviewed the Administrative Record and found that "[n]o treating or consultative medical source has established a cause and effect relationship between the [C]laimant's Grave's disease, bulging lumbar disc or HIV viral infection and her obesity." (*Ibid.*). Thus, had the Court not given Judge Wigenton's prior decision preclusive effect, this Court would have found that the ALJ's most recent analysis sufficiently considered Claimant's obesity in combination with her other severe impairments.

### B. Subjective Complaints of Pain

The Court next must determine whether the ALJ sufficiently evaluated Claimant's subjective complaints of pain. The Third Circuit established the following four-part test to determine the credibility of a social security claimant's subjective complaints. That test requires:

> (1) that subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence; (2) that subjective pain may support a claim for disability benefits and may be disabling; (3) that when such complaints are supported by medical evidence, they should be given great weight; and finally (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence.

*Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) (citations and quotations omitted).

Although the ALJ is required to consider the claimant's subjective complaints, the ALJ may reject these complaints when they are inconsistent with the objective medical evidence, claimant's own testimony, or other evidence in the record. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). However, the Third Circuit has recognized that "there is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record." *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "Since . . . [an] ALJ cannot reject evidence for no reason or for the wrong reason . . . , an explanation from the ALJ [indicating] the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper. *Id.* at 706-07; *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (holding that where conflicting medical evidence exists, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason") (citation and quotation omitted); *Duran v. Astrue*, No. 09-3812, 2010 U.S. Dist. LEXIS 134765, at *28 (D.N.J. Dec. 20, 2010) ("[W]hen the medical testimony or conclusions are conflicting, the ALJ is not only entitled but required to

choose between them, and may not reject pertinent or probative evidence without an explanation."); *see also Milano v. Comm'r of Soc. Sec.*, 152 F. App'x 166, 170 (3d Cir. 2005) ("When a claimant complains of pain and establishes the existence of a medical impairment that could reasonably be expected to produce the pain, the ALJ must determine the extent to which [the] claimant is accurately stating the degree of pain or the extent to which [ ] she is disabled by it.") (citation and quotation omitted). An "ALJ's failure to explain his implicit rejection of [probative and supportive] evidence [amounts to] error." *Cotter*, 642 F.2d at 707.

The paragraph of the ALJ's decision that discusses Claimant's subjective complaints of pain provides:

> [i]n determining the claimant's residual functional capacity at the fourth step of the sequential evaluation process, her allegations of chronic, severe low back pain and any other subjective complaints . . . must be considered pursuant to the Social Security Act, the Regulations and Social Security Ruling 96-7p . . . . However, I find that . . . the claimant's allegations about the frequency, intensity and duration of her multiple symptoms, including chronic, severe pain, are generally not credible and not consistent with the evidence of record.

(R. at 320).

Ms. Chatt argues that the ALJ's decision failed to properly evaluate her subjective complaints of pain, particularly with regard to her lower back. (Cl. Moving Br. at 16-22). Specifically, Ms. Chatt asserts that the ALJ's conclusion offers "no explanation . . . and there certainly is no evaluation consistent with . . . [what] must be included in every administrative decision." (*Id.* at 21). Conversely, the government asserts that the ALJ properly evaluated the Claimant's subjective complaints of pain. (Gov. Opp. Br. at 18-19).

The Court finds that Ms. Chatt has the better of the argument. The law in the Third Circuit is clear: "[s]ince . . . [an] ALJ cannot reject evidence for no reason or for the wrong

reason . . . , an explanation from the ALJ [indicating] the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07.  In his Opinion the ALJ highlighted the following medical evidence:

> (1) on March 25, 2004, an examination of Ms. Chatt's lumbosacral spine revealed no evidence of muscle spasms or tenderness. Flexion and extension of the trunk were full;[5]
>
> (2) on June 14, 2006, medical records and treatment notes from St. Michael's Hospital revealed that Ms. Chatt was diagnosed with chronic low back pain and continued use of Percocet was recommended;
>
> (3) a September 1, 2006 EMG revealed evidence of left lumbar radiculopathy suggesting discogenic low back pain.

(R. at 321).  The ALJ does not, however, provide an explanation clarifying why he rejected probative evidence which appears to support Ms. Chatt's complaints of lower back pain.

In *Cotter*, the Third Circuit elaborated on why it deemed such a practice problematic. The Third Circuit opined:

> [i]t is difficult to separate the obligation to explain why certain evidence has been accepted from the obligation to explain why other significant probative evidence has been rejected. To state the issue simplistically but clearly, if the record contained the evidence of six medical experts, one of whom supported the claimant and five of whom did not, it would be of little assistance to our review function were the ALJ merely to state that s/he credited the one supporting expert because that evidence adequately demonstrated disability, but failed to either mention or explain why the evidence of the other five experts was rejected. In that instance, we would not know whether the evidence of the five experts was rejected because the ALJ found it lacking in credibility, irrelevant, or marred by some other defect.

*Cotter*, 642 F.2d at 706.

---

[5] The Court notes that the ALJ limited his conclusion that "no significant probative weight would be accorded to the March 25, 2004 assessment of Dr. Tiersten" as it relates to Ms. Chatt's knee impairment.  (*See* R. at 323).

The problem that *Cotter* foretold, is the precise issue presented here. That is, the ALJ concluded that certain medical evidence (*e.g.*, the medical records and treatment notes from St. Michael's Hospital along with the September 1, 2006 EMG evidence) was not credible without explaining why that evidence was rejected.[6] The ALJ's failure to explain his rationale in rejecting this probative evidence runs afoul of what the Third Circuit and Social Security Administration require.[7] For that reason, this Court is unable to perform a proper review, and will remand this issue back to the ALJ to make a determination that is consistent with this Opinion.

### C. Residual Functional Capacity Determination

To satisfy the requirements at step four, the ALJ's opinion must contain an assessment of Ms. Chatt's residual functional capacity. "'Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft*, 181 F.3d at 359 n.1); *see also* 20 C.F.R. § 404.1545(a). "In making a residual functional capacity determination, the ALJ must consider all evidence before him." *Ibid.* "That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli*, 247 F.3d at 41 (citing 20 C.F.R. § 404.1545(a)).

---

[6] The Court also finds it problematic that the ALJ did not cite to additional medical records and/or testimony that would further support his conclusion that Ms. Chatt's subjective complaints of pain are not credible and consistent with the evidence of record. "It is not for this Court to review the record evidence *de novo* to find evidence supporting the ALJ's determination." *Nicholson v. Comm'r of Soc. Sec.*, No. 10-750, 2011 U.S. Dist. LEXIS 28626, at *17 (D.N.J. Mar. 21, 2011) (citing *Fargnoli*, 247 F.3d at 44 n.7).

[7] *See* SSR 96-7p, 1996 SSR LEXIS 4, at *3-4 ("It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

An ALJ must give "not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. Moreover, "[w]here there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided." *Fargnoli*, 247 F.3d at 42.

In assessing Ms. Chatt's residual functional capacity, the ALJ explained:

> I have attempted to formulate *some additional limitations* that may be inferred from the record evidence and the subjective complaints in determining claimant's residual functional capacity, and I incorporated them in my hypothetical questions to the vocational expert at the post-remand hearing. Thus, I have reduced the range of light work by including restricted pushing or pulling right-leg controls *due to the complaints of right-knee pain*, and I have restricted exposure to heights or dangerous machinery *due to the complaints of a recent onset of fatigue*.

(R. at 323) (emphasis added). The ALJ then concluded that Ms. Chatt had the following residual functional capacity:

> lifting and carrying objects weighing up to 20 pounds; frequently lifting and carrying objects weighing up to 10 pounds; standing, walking, and siting up to six hours in an eight-hour day; pushing and pulling bilateral arm controls and left leg controls but not right leg controls; not requiring repetitive bending or squatting or exposure to heights or dangerous machinery.

(R. at 323). Ms. Chatt argues that ALJ's assessment of her residual functional capacity is fundamentally flawed. Specifically, Claimant contends that the ALJ's assessment ignored Claimant's complaints of fatigue, pain, and mental restrictions. (Cl. Moving Br. at 28-30).

Having thoroughly reviewed the record, the Court finds Ms. Chatt's arguments persuasive for two dispositive reasons.[8] First, the ALJ does not appear to have considered evidence and testimony relating to Ms. Chatt's complaints of lower back pain in assessing Ms. Chatt's residual functional capacity. Indeed, the ALJ was clear: "I have attempted to formulate some additional limitations . . . in determining [C]laimant's residual functional capacity . . . . Thus, I have reduced the range of light work . . . *due to the complaints of right-knee pain*, and I have restricted exposure to heights or dangerous machinery *due to the complaints of a recent onset of fatigue*." (R. at 323) (emphasis added). These specific limitations do not, however, address Ms. Chatt's lower back pain.[9]

Second, the ALJ does not appear to have considered, despite referencing in his opinion, the vocational expert's response to his third hypothetical. Specifically, the ALJ asked if "the individual suffered from fatigue to the point where the individual required unscheduled rest breaks and might even miss some days from work without scheduling due to attacks of fatigue, would it eliminate all the jobs that exist in reasonable numbers in the economy?" (R. at 441). In response, the vocational expert concluded that "in my opinion, that limitation would prevent the person from working in the competitive labor market." (*Ibid.*). This testimony appears to undermine the ALJ's assessment of Ms. Chatt's residual functional capacity. That said, the ALJ did not explain, to the satisfaction of this Court, how the vocational expert's conclusion factored into assessing Ms. Chatt's residual functional capacity.

---

[8] This Court does not, however, agree that the ALJ ignored Ms. Chatt's alleged mental restrictions for two reasons. First, Claimant conceded that this case was not a "pysch case" and has never been worked up as such. (R. at 449). Second, assuming *arguendo*, that this was a case based upon mental impairments, the ALJ's decision provided a detailed analysis as to why the record did not support Ms. Chatt's claim of a mental impairment. (*See id.* at 324).

[9] To be succinct, the Court incorporates its analysis in Part IV B, *supra*. Thus, even assuming the ALJ considered evidence relating to Ms. Chatt's lower back pain, the ALJ did not provide "an explanation of the reasoning behind [his] conclusion," which, based on that deficiency alone, would warrant remand. *Fargnoli*, 247 F.3d at 42.

In addition to the vocational expert's testimony, there are other examples of evidence that may have been overlooked. Specifically, there is considerable testimony in the record which appears to support the notion that Ms. Chatt "cannot do any job for 6-8 hours on a daily basis [because] . . . [s]he is chronically fatigued . . . [and] gets exhausted . . . ." (R. at 322); (R. at 323) ("Since her application , . . . [claimant's] fatigue has gotten worse."); (*id.* at 432) (the pain causes me to be "bedridden some days"); (*id.* at 448) ("But the cost of the [HIV being controlled] is this fatigue, and that's going to affect her ability to function on a daily job . . . ; it's just the ability to sustain , . . . that's where the problem comes in.").

Thus, this Court "cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. For these reasons, the ALJ's assessment of Ms. Chatt's residual functional capacity was not as "comprehensive and analytic as feasible." *See id.* at 706. Therefore, this Court is unable to properly conduct the necessary judicial review in determining whether the ALJ's decision was based upon substantial evidence. *See id.* at 704-05 ("There are cogent reasons why an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests. Chief among them is the need for the appellate court to perform its statutory function of judicial review."); *Dombrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) ("Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."). Accordingly, we must vacate the judgment and remand this matter back to the ALJ so that he may accompany his residual functional capacity assessment with a clear and satisfactory explanation of the basis on which it rests.

### D.      Consideration of the ALJ's Hypothetical Questions

Ms. Chatt argues "that the hypothetical questions asked of the [vocational expert] do not accurately reflect all of plaintiff's limitations." (Cl. Moving Br. at 31). Specifically, the hypothetical questions did not include: "pain, postural limitations due to obesity, fatigue or exhaustion, or a combination of all those . . . ."[10] (*Ibid.*).

An ALJ is not required "to submit to the vocational expert every impairment alleged by a claimant. Instead the directive [announced] in *Podedworny* is that the hypothetical posed must 'accurately portray' the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'" *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)). "[T]he ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations." *Ibid.* To determine whether a limitation has been credibly established, the Third Circuit has provided the following guidelines:

> [l]imitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response. Relatedly, the ALJ may not substitute his or her own expertise to refute such record evidence. *Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason.* Finally, limitations that are asserted by the claimant but that lack objective medical support may possibly be considered nonetheless credible. In that respect the ALJ can reject such a limitation if there is conflicting evidence in the record, but should not reject a claimed symptom that is related to an impairment and is consistent with the

---

[10] At the outset, the Court finds Ms. Chatt's argument that the ALJ did not incorporate her fatigue or exhaustion into the hypothetical questions to be without merit. Indeed, one of the ALJ's questions specifically addressed this limitation. (*See* R. at 441) ("if . . . the individual suffered from fatigue to the point where the individual required unscheduled rest breaks and might even miss some days from work . . . due to attacks of fatigue, would it eliminate all the jobs that exist in reasonable numbers in the national economy?").

> medical record simply because there is no objective medical evidence to support it.

*Ibid.* (citations and quotations omitted) (emphasis added).

The Court finds that Claimant's argument relating to her lower back pain has merit for two reasons. First, this limitation, as previously indicated (*see* Part IV B, *supra*), was medically supported and contradicted by evidence in the record. However, the ALJ rejected this limitation without providing an explanation. Second, it is not clear whether the ALJ ever considered this limitation in assessing Ms. Chatt's residual functional capacity. *See* Part IV C, *supra*. Therefore, given these deficiencies, it is unclear whether the ALJ properly included all of Claimant's credibly established limitations when submitting the hypothetical questions to the vocational expert.

**V.     Claim of Bias and Request for a Different ALJ on Remand**

Finally, Ms. Chatt claims that the ALJ exhibited bias and that on remand the Commissioner should be ordered to reassign this matter to a different ALJ. The Third Circuit has stated that remand to a different ALJ is appropriate where bias against the claimant has been proved. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995) (citing *Hummel v. Heckler*, 736 F.2d 91 (3d Cir. 1984)). The Third Circuit has also held that a claimant is entitled to a hearing before a different ALJ where the ALJ exhibited coercive, intimidating, and offensive conduct that prevented the claimant from receiving a full and fair hearing. *Id.* at 904.

Ms. Chatt seeks remand to a different ALJ because "the ALJ's attitude towards plaintiff's counsel is one of hostility, prejudice[,] and the appearance of bias against any claimant appearing before this ALJ represented by this law firm." (Cl. Moving Br. at 39). This argument is without merit for two reasons. First, the Claimant has not presented the Court with any specific evidence of bias. Second, the Court has reviewed the transcripts from the hearings conducted before the

ALJ, and discerns no evidence of coercive, intimidating, and offensive conduct. Accordingly, this Court finds it inappropriate at this juncture to remand this matter to a different ALJ.

## VI.    Conclusion

For the foregoing reasons, the judgment of the ALJ is vacated and this case is remanded for further proceedings consistent with this Opinion. An appropriate order shall accompany this Opinion.

s/ Esther Salas
Esther Salas, U.S.D.J.
